IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KELLY SPARROW, #85842-022,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN ESTELA DERR,<br><br>Respondent. | CIVIL NO. 23-00031 JAO-RT<br><br>ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. Section 2241 |

**ORDER DISMISSING PETITION FOR WRIT OF
HABEAS CORPUS PURSUANT TO 28 U.S.C. SECTION 2241**

Petitioner Kelly Sparrow ("Petitioner") is incarcerated at the Federal Detention Center in Honolulu, Hawaiʻi and is scheduled for supervised released on April 11, 2023. ECF No. 1. On January 23, 2023, Petitioner filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2241, seeking an order directing the Bureau of Prisons to apply First Step Act earned time credits toward her scheduled release date. Petitioner contends that she is entitled to an earlier transfer to supervised release.

The Court FINDS that Petitioner failed to exhaust her administrative remedies and that there is no basis to excuse her failure to exhaust. The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2241 is DISMISSED without prejudice, but without leave to amend.

## I.  STANDARD OF REVIEW

When a federal or state prisoner contends that she "is in custody in violation of the Constitution or laws or treaties of the United States," § 2241 confers a general grant of habeas jurisdiction.  28 U.S.C. § 2241(a), (c)(3).  "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus[.]"  *Muhammad v. Close*, 540 U.S. 749, 750 (2004).  So, a petitioner challenging the manner, location, or conditions of the execution of her sentence must file a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition for Habeas").

A court entertaining a Petition for Habeas must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."  28 USC § 2243.  The district court should not dismiss a habeas petition "without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted."  *Jarvis v. Nelson*, 440 F.2d 13, 14 (9th Cir. 1971).

## II.  BACKGROUND

On March 4, 2019, this district court sentenced Petitioner to 46 months of imprisonment and three years of supervised release.  *See* ECF No. 6-3 at 2.  The Bureau of Prisons ("BOP") transferred Petitioner to supervised release on April 14,

2021. *Id*. at 3. After violating her supervised release conditions, Petitioner returned to the Honolulu Federal Detention Center on January 6, 2023. ECF No. 6-4 at 2. Petitioner's anticipated release date is April 11, 2023.

Petitioner filed her Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2241 ("Habeas Petition") on January 23, 2023. ECF No. 1. Respondent Estela Derr ("the Government") filed a response on February 16, 2023. ECF No. 6. Petitioner replied to the response on February 24, 2023. ECF No. 7.

### III.   DISCUSSION

The First Step Act ("the FSA") provides eligible inmates an opportunity to earn time credits ("FSA Credits") for successfully completing evidence-based recidivism reduction programming or productive activities ("Productive Programming"). *See* 18 U.S.C. § 3632(d)(4)(A). Congress tasked BOP with providing periodic recidivism risk assessments of prisoners who successfully participate in Productive Programming at least once a year. *See id*. § 3632(b)(4)(E)(5). A prisoner can earn ten days of FSA Credits for every thirty days of their successful participation, and an additional five days if BOP determines that a prisoner that is at a minimum or low risk of recidivism has not increased their risk of recidivism over two consecutive assessments. *See id*. § 3632(d)(4)(A).

Petitioner argues that although her supervised release date is April 11, 2023, based on her total earned time credits, Petitioner is entitled to an earlier release to supervision on February 29, 2023. ECF No. 1. The Court assumes Petitioner means March 1, 2023. Petitioner admits that she has not exhausted her administrative remedies, but argues that "it is no longer the law that exhaustion of administrative remedies is a jurisdictional requirement in a 2241 proceeding." *Id*. Petitioner further argues that this Court should excuse any exhaustion requirement in light of her impending release date.

A.  **The Court Has Jurisdiction Over Petitioner's Habeas Despite Her Failure To Exhaust Her Administrative Remedies**

Petitioner is correct that exhaustion of administrative remedies under the FSA is not a jurisdictional requirement. Administrative exhaustion can be either statutorily required or judicially imposed as a matter of prudence. *See Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) ("Aside from statutory exhaustion requirements, courts may prudentially require habeas petitioners to exhaust administrative remedies."). "If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004).

"The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory

4

requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55 (1995). Our circuit, the Ninth Circuit, along with every circuit court to have addressed the question, has concluded that failure to exhaust administrative remedies under the FSA is not a jurisdictional limit, and so such failure does not deprive this Court of subject-matter jurisdiction. *See United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021).

Nonetheless, "[p]rudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional." *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). "Lower courts are, thus, not free to address the underlying merits without first determining the exhaustion requirement has been satisfied or properly waived." *Laing*, 370 F.3d at 998.

Indeed, the Ninth Circuit has opined that "the decision whether to require exhaustion is not discretionary in the sense that it can be made solely on the basis of the equities in any given case without regard to authoritative precedent." *Montgomery v. Rumsfeld*, 572 F.2d 250, 254 n.4 (9th Cir. 1978). "Rather, judicially-developed exhaustion requirements are 'common law' rules in that the decisions of appellate courts on this issue will govern the subsequent decisions of the lower courts to which they properly apply." *Id*.

5

When a petitioner fails to exhaust her administrative remedies before filing a Petition for Habeas, common law requires this Court to determine "whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust [her] administrative remedies before proceeding in court." *Brown*, 895 F.2d at 535. With these parameters in mind, the Court turns to whether it is appropriate to exercise its discretion and excuse Petitioner's failure to exhaust her administrative remedies.

**B.     The Court Declines To Waive The Exhaustion Requirement**

It is well settled in this circuit that a petitioner seeking habeas relief under section 2241 must first exhaust his or her available administrative remedies. *See Singh v. Napolitano*, 649 F.3d 899, 900 (9th Cir. 2011). However, the Ninth Circuit recognizes a number of reasons for waiving the exhaustion requirement, such as situations where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing*, 370 F.3d at 1000.

Petitioner asserts that failure to exhaust her administrative remedies should be excused because of her "impending release date." ECF No. 1. Petitioner contends that irreparable injury will result if she is unable to secure immediate

6

judicial consideration of her claim that BOP failed to apply her ETC toward an earlier supervised release date. *Id*.

The Government counters that there is no reason to waive the exhaustion requirement in this case. ECF No. 6 at 5. It urges the Court to allow BOP reasonable time to review Petitioner's challenge to calculate her FSA Credits. *Id*. The Government contends that Congress' delegation of authority to BOP to calculate sentences is not merely a ministerial function; rather, it involves a multitude of factors implicating BOP's discretion. *Id*. at 6. It posits that Petitioner will have time to challenge and seek review of any issues relating to her eligibility determination under the FSA, the calculation of her FSA time credits, and/or her projected release. *Id*. at 5–6.

The Court concludes that waiving the exhaustion requirement in this case is not a proper exercise of its discretion. Courts may require exhaustion if:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*United States v. Cal. Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (citing *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 193–95 (1969); *Stauffer Chemical Co. v. FDA*, 670 F.2d 106, 107 (9th

Cir. 1982) (*overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014); *Montgomery*, 572 F.2d at 253).

    1.    BOP's Expertise Is Necessary

Here, agency expertise is indeed necessary to generate a proper record so that the Court may reach a proper decision. "It is the administrative responsibility of the Attorney General, the Department of Justice, and the Bureau of Prisons to compute sentences and apply credit where it is due." *United States v. Clayton*, 588 F.2d 1288, 1292 (9th Cir. 1979). Congress tasked BOP with implementing the risk and needs assessment system developed pursuant to 18 U.S.C. §§ 3631-3635 ("the System"). The System is the heart of the FSA's implementation. *See* 18 U.S.C. § 3632(f) ("The Attorney General shall develop and implement training programs for Bureau of Prisons officers and employees responsible for administering the System[.]"); 18 U.S.C. § 3632(g) ("In order to ensure that the Bureau of Prisons is using the System in an appropriate and consistent manner, the Attorney General shall monitor and assess the use of the System, which shall include conducting annual audits of the Bureau of Prisons regarding the use of the System.").

Title 18, United States Code, Section 3621 governs imprisonment of persons convicted of federal crimes. Under § 3621(h)(1), BOP administers an initial intake risk and needs assessment on all inmates in the BOP system. BOP is also tasked with (1) providing opportunities for prisoners to participate and complete

Productive Programming, (2) reviewing "each prisoner's recidivism risk level," (3) awarding "earned time credit as an incentive for participation" in Productive Programming, and (4) determining "when a prisoner is ready to transfer into prerelease custody or supervised release" under § 3624, titled "Release of Prisoner."  *Bottinelli v. Salazar*, 929 F.3d 1196, 1197–98 (9th Cir. 2019).

"Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release." *Id.* at 1198.  Under § 3624(g), supervised release is available to a prisoner who has:  (1) earned time credits under the System in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment"; (2) shown through the System "a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;" (3) "had the remainder of the prisoner's imposed term of imprisonment computed under applicable law;" and (4) "been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner."  As previously explained in this order, a prisoner can earn ten days of FSA Credits for every thirty days of their successful participation in Productive Programming, and an additional five days if BOP determines that a prisoner that is at a minimum or low risk of recidivism has not increased their risk of recidivism over two consecutive assessments.  *See* 18 U.S.C. § 3632(d)(4)(A).

9

The Government maintains that BOP has conducted an initial classification of Petitioner. ECF No. 6 at 6. This Court lacks any further information about what BOP determined at this classification and also whether Petitioner successfully completed any Productive Programming. Nor has Petitioner indicated how she calculated that she was entitled to release nearly a month and a half earlier than her scheduled supervised release date.

"This is exactly the type of case in which exhaustion of administrative remedies should be required." *Chua Han Mow v. United States*, 730 F.2d 1308, 1313–14 (9th Cir. 1984) (opining that an action involving the application of credit to a prisoner's sentence "is exactly the type of case in which exhaustion of administrative remedies should be required"). Because Petitioner did not even attempt to resolve her grievances, the record is bare of any facts that would enable the Court to determine if Petitioner is eligible for early release or if her calculations are correct. Any review of Petitioner's claim that she is entitled to an earlier release to supervision would require BOP's participation and expertise.

2. BOP's Administrative Scheme

The Court is also concerned that relaxing the requirement that prisoners exhaust their administrative remedies before challenging their FSA credit determinations in court would encourage the deliberate bypass of BOP's administrative scheme. Petitioner is aware that there is an administrative remedy

for her to challenge BOP's application of her FSA Credits that she is expected to employ. BOP states that Petitioner has a handbook outlining BOP's Administrative Remedy Program. *See* Declaration of Kris Robl, ECF No. 6-1 at 2 ("Robl Decl."). Yet, Petitioner openly admits that she did not exhaust such remedies. Petitioner's sole argument for bypassing these requirements is her "impending release date."

Congress delegated to BOP the duty to manage and regulate all federal penal and correctional institutions. *See* 18 U.S.C. § 4042(a)(1); *Reeb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011). As explained by the Government, *see* ECF No. 6 at 405, BOP's Administrative Remedy Program has four levels. *See* 28 C.F.R. §§ 542.10–542.19; Robl Decl. ¶¶ 3-4. First, an inmate must try to resolve the issue informally with the Unit Team staff by using the BP-8 Form to submit a remedy request. *See* 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, the inmate uses the BP-9 Form to submit an administrative remedy request to the Warden. *See id.* §§ 542.13(a), 542.14. If unsatisfied with the Warden's response, the inmate uses the BP-10 Form to appeal to the Regional Director. *See id.* § 542.15. Finally, if unsatisfied with the Regional Director's response, the inmate uses the BP-11 Form to appeal to the General Counsel. *See id.* An inmate properly exhausts available remedies by appealing through to the General Counsel. *See id.*; *see also Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018).

11

Unless the request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the administrative process takes a minimum of 90 days to complete. *See* 28 CFR § 542.18 (giving Warden 20 calendar days, the Regional Director 30 calendar days, and the General Counsel 40 calendar days to respond to the request). Petitioner is scheduled to be incarcerated for less than 90 days. Nonetheless, in this case, the Court finds no reason to excuse her failure to exhaust.

Petitioner did not even attempt to start the process of exhaustion. It is possible that the administrative remedies process could have been completed if she had started the administrative process on the day she filed the instant Petition. At the very least, she could have obtained some reasoning and discussion from BOP as to its view of her calculation of FSA Credits even if she was not able to complete the entire process before her scheduled release date.

Ultimately, Petitioner's failure "to act promptly is not enough to waive the exhaustion requirement on account of futility." *Cacayorin v. Derr*, No. CV 23-00077 JMS-WRP, 2023 WL 2349596, at *3 (D. Haw. Mar. 3, 2023). "Waiving the exhaustion requirement in this case would only encourage other inmates to ignore the BOP's administrative remedy program." *Id*.

    3.    Proper Administrative Review

Finally, administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. As explained above, BOP's Administrative Remedy Program contains four levels of review. Petitioner would have had several opportunities to challenge BOP's determinations and each level of review would have allowed BOP to correct any mistakes identified.

The exhaustion requirement aids judicial review because it allows the "appropriate development of a factual record in an expert forum," conserves the "court's time because of the possibility that the relief applied for may be granted at the administrative level," and allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). Allowing BOP the first opportunity to review a prisoner's challenge to its application of FSA Credits is critical to judicial review of a prisoner's challenge. The Court concludes that excusing Petitioner's failure to exhaust administrative remedies is not a proper exercise of its discretion.

C. **The Government Maintains Petitioner Is Not Eligible To Earn Or Apply FSA Credits**

Although the Court has little information on the merits of this case, BOP maintains that Petitioner is ineligible to earn or apply any FSA Credits. *Id*. at 6. BOP rationalizes that Petitioner has only been in custody for a little more than four weeks so Petitioner will not be in BOP custody long enough to have two consecutive assessments as required by the FSA before her April statutory release

date. *Id.* So, according to BOP, Petitioner is currently, and will remain, ineligible to earn or apply any FSA Credits.

The Court finds no reason to mistrust BOP's assertion. The process for classification and program reviews of inmates in BOP's custody is codified in 28 C.F.R. § 524.11. Under § 524.11(a), newly committed inmates "will be classified within 28 calendar days of arrival at the institution designated for service of sentence." Inmates will then receive a program review at least once every 180 calendar days, unless an inmate is within twelve months of the projected release date, in which case, staff will conduct a program review at least once every 90 calendar days. *Id.* Petitioner fails to point to any authority requiring BOP to apply FSA Credits even if she is not in custody long enough for BOP to conduct the assessments required under the FSA.

In any case, the Court finds that BOP, and not this Court, is best suited to explain the reasons and under what authority Petitioner is not eligible for early release.

### IV.  CONCLUSION

For the foregoing reasons, the Court DISMISSES the Petition WITHOUT PREJUDICE. Petitioner failed to exhaust the administrative remedies available to her as to her time credits and waiver of the exhaustion requirement is not appropriate in this case. In addition, the Court concludes that there is no tenable

14

claim for relief that can be pled even if this Court were to grant Plaintiff leave to amend.  The Court's dismissal of the Habeas Petition is thus, without leave to amend.  Petitioner may not file another Petition for Habeas without first exhausting her administrative remedies.

    The Clerk is DIRECTED to close this case.

    IT IS SO ORDERED.

    DATED:    Honolulu, Hawaiʻi, March 24, 2023.



Jill A. Otake
United States District Judge

CIVIL NO. 23-00031 JAO-RT; *Sparrow v. Derr*; Petition for Habeas

15